1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9       FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| 10  D.H. EVERS, etc., | Case No. CV 09-00791 |
| 11                                     Plaintiff, | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| 12          vs. | |
| 13  PURSE SEINE VESSEL OWNERS ASSOCIATION, et al., | **Note for motion calendar: Friday, October 30, 2009** |
| 14      Defendants and Counter-Claimants, | |
| 15  D.H. EVERS, etc., | |
| 16                         Third-Party Plaintiff, | |
| 17          vs. | |
| 18  ROBERT KEHOE, et al.,<br>                         Third-Party Defendants. | |

19                              <u>MOTION</u>

20       Plaintiff D.H. Evers on behalf of Underwriting Members of Syndicate 535 at

21  Lloyd's ( "Syndicate 535"), moves for summary judgment pursuant to Fed. R. Civ. P.

22  56 (c).  Syndicate 535 requests a declaratory judgment that it owes nothing to

23  defendants and an order dismissing all defendants' counterclaims because no action

24  was commenced within one year as required by the applicable policy of insurance.

25  Syndicate 535 bases this motion on the files and records herein, the subjoined

26  memorandum of points and authorities, and the declaration of Nicolas J. Vikstrom

27  (hereafter "Vikstrom Dec.") with exhibits thereto.

28
Case No.:  CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I. FACTS

Syndicate 535 and third-party defendant National Casualty are insurers who each covered a 50% share of the $1 million marine protection and indemnity policy of insurance at issue in this case. The defendants are policy insureds Purse Seine Vessel Owners Association ("PSVOA") and F/V Aleutian Spirit, Inc. ("ASI"). Syndicate 535 has paid its 50% share of the $1 million policy limit applicable to the underlying seaman's personal injury claim and filed this action to obtain a declaratory judgment that nothing more is owed to the defendants.

PSVOA is a Washington corporation and has its primary place of business in Seattle, Washington. Defendants' Answer, Dkt. no. 8 at 2, ¶3. PSVOA administers and manages the Seine Vessels' Reserve ("SVR"). Exs. B and C to Vikstrom Dec. (Seine Vessels' Reserve Articles of Association and brochure).

SVR is a voluntary association of fishing vessel owners who are members of the PSVOA. SVR provides insurance coverage to its member vessel owners and purchases reinsurance from outside insurers to avoid excess losses and preserve member surplus. SVR provides the investigation and adjustment of claims, and maintains a fund for the payment of losses or claims made by or against its members. SVR is a Washington association and conducts business under the authority of the RCW 48.01.050. Pursuant to SVR's Articles of Association, SVR's Board of Trustees and the PSVOA jointly administer and manage the SVR. Furthermore, PSVOA serves as the "Manager" of SVR and has the authority and responsibility to among other things, keep records of all business transactions,

---

[1] As the court is painfully aware, the parties have filed several other motions focused upon third-party claims that are noted for the court's October 16, 2009, motion calendar. It should be noted that if the court grants this motion brought by Syndicate 535, then all of the third-party claim motions would effectively be rendered moot.

Case No.: CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

1 investigate and adjust all claims, and establish all general policy guidelines for the

2 operation of SVR. Ex. C to Vikstrom Dec. (Seine Vessels' Reserve Articles of

3 Association).

4     As defendants have admitted in their answer to the amended complaint,

5 PSVOA sought marine insurance for PSVOA/SVR members through the services of

6 its Seattle broker, Acordia (nka Wells Fargo, but referred to herein as Acordia.)

7 Answer, Dkt. no. 8 at 2-3, ¶5. PSVOA obtained marine insurance naming itself,

8 Purse Seine Services, Inc. (an affiliate of PSVOA), SVR, and individual PSVOA/SVR

9 member vessel owners, such as defendant ASI, as insureds for the policy period

10 October 1, 2001 to October 1, 2002, under Policy No. PMH2045/01 (the "Policy").

11 The Policy was actually a collection of several separate types of marine insurance

12 coverages, each having their own policies setting out terms, limits, and conditions of

13 coverage. One of those was marine protection and indemnity insurance provided

14 under "SP-38 Protection & Indemnity Clauses." Ex. A to Vikstrom Dec. (Policy

15 WF00081-139, and WF 00111-115 in particular).

16     ASI is an Alaska company and member of the PSVOA that insured the F/V

17 ALEUTIAN SPIRIT through PSVOA's insurance program as embodied in the

18 Policy. Amended Complaint, Dkt. no. 3 at 2, ¶¶4-5; Answer, Dkt. no. 8 at 2-3, ¶¶4-5

19 and Ex. 2 attached thereto.

20     PSVOA and ASI were bound by the terms, limits, and conditions contained

21 within the Policy specifically including lines 92-95 of the "SP-38 Protection &

22 Indemnity Clauses" of the marine protection and indemnity insurance, as follows:

23
24
25
26
> <u>No action shall lie against this Company for the recovery of any loss
> sustained by the assured</u> unless such action is brought within one year
> after the entry of any final judgment or decree in any litigation against
> the assured, or <u>in the event of a claim without the entry of such final
> judgment or decree, unless such action is brought within one year from
> the date of the payment of such a claim.</u>

27 (Emphasis added.) Ex. A to Vikstrom Dec. at WF 00114. That clause required any

28
Case No.: CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

1  assured having any claim against Syndicate 535 to bring an action within one year

2  of payment of an underlying claim where no final judgment had been entered in an

3  underlying case. That describes the exact situation at play here.

4        In April 2002, crewmember Jason Miller of the F/V ALEUTIAN SPIRIT was

5  injured while using a gangway to that vessel. He sued the vessel owner, ASI, in

6  Alaska to recover damages for his injury (hereinafter "Miller Claim"), and the SP-38

7  Protection & Indemnity Clauses covered the Miller Claim. Amended Complaint,

8  Dkt. no. 3 at 2-3, ¶10; Answer, Dkt. no. 8 at 3, ¶10.

9        As stated above, Syndicate 535 was one of two underwriters who each covered

10  a 50% share of the $1 million coverage under the SP-38 Protection & Indemnity

11  Clauses. Coverage for the Miller Claim was subject to a deductible of $2,500 per

12  occurrence and a policy limit of $1 million. Amended Complaint, Dkt. no. 3 at 2, ¶¶

13  6-8; Answer Dkt. no. 8 at 3, ¶¶ 6-8.

14        As PSVOA's executive director, Rob Zuanich, candidly admitted in a memo to

15  PSVOA board of directors in May of 2009, PSVOA appointed its own Seattle in-

16  house counsel, Robert Kehoe, to defend ASI in the Miller Claim. Ex. D to Vikstrom

17  Dec. (Zuanich memo, at PSVOA 00070). PSVOA, acting by Zuanich and in-house

18  counsel Kehoe, planned the defense of the Miller Claim and reported developments

19  and litigation strategy to the lead underwriter, National Casualty, through its

20  affiliate "Scottsdale Insurance Company" in Arizona. Exs. D and E to Vikstrom

21  Dec. (Zuanich memo PSVOA 00070-73, and Litigation Plan WF 00519-527).

22        The Miller Claim was tried in court in Alaska in 2007, resulting in a net

23  damage award for Jason Miller of $768,417 as set forth in the trial judge's Amended

24  Findings of Fact and Conclusions of Law dated August 22, 2007. ASI's liability to

25  Miller after trial included the damages of $768,417, plus interest, costs, and

26  attorneys' fees that had not yet been set by the trial judge (hereafter "Miller

27  Liability"). Exs. D and F to Vikstrom Dec. (Zuanich memo at PSVOA 00071 and

28

Case No.: CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

1  Amended Findings at WF 00004-24).  By that time, some of the $1 million policy

2  limit had already been drawn down to pay costs and expenses incurred to

3  investigate and defend the Miller Claim.  Amended Complaint, Dkt. no. 3 at 3, ¶13;

4  Answer, Dkt. no. 8 at 3, ¶13.

5      It was apparent to PSVOA a final judgment on the total Miller Liability

6  would push beyond the $1 million policy limit.  Ex. D to Vikstrom Dec. (Zuanich

7  memo at PSVOA 00071).  Before a judgment was issued by the court on the full

8  amount of the Miller Liability, a post-trial settlement was agreed, resulting in the

9  lump sum payment of $1 million by PSVOA/SVR to Jason Miller in December of

10  2007 (hereafter "Miller Settlement").  Exs. D and G to Vikstrom Dec. (Zuanich

11  memo at PSVOA 00071 and Miller Claim payment ledger at WF 00161).

12      By PSVOA's own rendering, the $1 million Miller Settlement plus other

13  expenses and payments incurred on the Miller Claim amounted to $1,253,642.  Ex.

14  D to Vikstrom Dec. (Zuanich memo at PSVOA 00071).  PSVOA/SVR paid the entire

15  $1 million Miller Settlement in December of 2007, allegedly relying upon a promise

16  "that underwriters would agreed (sic) to pay all amounts in excess of the $1 million

17  policy limit."  Exs. D and G to Vikstrom Dec.  (Zuanich memo at PSVOA 00071 and

18  Miller Claim payment ledger at WF 00161).  ASI paid nothing to satisfy the Miller

19  Settlement.  Ex. I to Vikstrom Dec. (defendants' "Supplemental Initial Damages

20  Disclosure" explaining in ¶C that PSVOA funded the Miller Settlement and ASI did

21  not).

22      It is undisputed that Syndicate 535 has paid its entire 50% share of the $1

23  million policy limit.  Amended Complaint, Dkt. no. 3 at 3, ¶19; Answer, Dkt. no. 8 at

24  5, ¶19.  As PSVOA and ASI admit in their answer, they were aware no later than

25  July of 2008 that Syndicate 535 did not agree to pay anything beyond the 50% share

26  of the $1 million policy limit.  Answer, Dkt. no. 8 at 6, affirmative defenses ¶8; *see*

27  *also* Ex. H to Vikstrom Dec. (memo to defendants' broker Acordia confirming that

28

Case No.:  CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

1  Syndicate 535 will pay nothing beyond the 50% share of the $1 million policy limit).

2  Syndicate 535 has never agreed with PSVOA's contention that there exists any

3  obligation to pay anything beyond the 50% share of the $1 million policy limit in

4  connection with the Miller Settlement.

5      In June 2009, 18 months after PSVOA/SVR paid the Miller Settlement,

6  Syndicate 535 filed this action seeking a declaratory judgment that it had no

7  obligation to pay anything further.  In response, PSVOA and ASI contend that

8  Syndicate 535 must pay an additional $131,460.50 plus "punitive damages."  Ex. I

9  to Vikstrom Dec. (defendants' "Supplemental Initial Disclosures").  They base that

10  contention on their allegation that lead underwriter National Casualty expressly

11  waived the $1 million policy limit.  Answer, Dkt. no. 8 at 6, affirmative defense ¶4.

12      Even assuming for purposes of this motion both that the waiver allegation is

13  true and that National Casualty actually had the authority to waive the policy limit

14  on behalf of Syndicate 535 (these contentions are not admitted to be true), it is

15  undisputed that neither PSVOA nor ASI filed an action within one year of when

16  PSVOA/SVR paid the Miller Settlement in December of 2007.  Amended Complaint,

17  Dkt. no. 3 at 4, ¶26; Answer, Dkt. no. 8 at 5, ¶26.  Thus, PSVOA and ASI failed to

18  pursue any action within the time limit expressly set forth in the SP-38 Protection

19  & Indemnity Clauses.

20                   **II.   ARGUMENT**

21  **A.   Summary Judgment Standard**

22      Summary judgment is proper when "the pleadings, discovery and disclosure

23  materials on file, and any affidavits show that there is no genuine issue as to any

24  material fact and that the movant is entitled to judgment as a matter of law."  Fed.

25  R. Civ. P. 56(c).  An issue is genuine only if there is a sufficient evidentiary basis on

26  which a reasonable fact finder could find for the non-moving party, and a dispute is

27

28

Case No.: CV 09-00791

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

1  material only if it could affect the outcome of the suit under governing law.

2  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B. Washington Law Governs the Marine Insurance Policy Issue Presented.

#### 1. State Law Applies When There Is No Established Federal Maritime Rule Addressing the Issue in Question.

6  This case involves the enforcement of a time for suit clause in a marine

7  insurance policy.  Although the court has admiralty jurisdiction of this matter

8  under 28 U.S.C. § 1331(1), marine insurance contract issues are governed by state

9  law unless there is an established federal maritime rule that addresses the issue or

10  there is a need to create one to achieve uniformity in admiralty practice.  *Yu v.*

11  *Albany Insurance Co.*, 281 F.3d 803, 806, 2002 A.M.C. 660 (9th Cir. 2002).  There is

12  no well established federal maritime rule regarding the enforcement of time for suit

13  clauses in marine insurance policies.  Therefore, state law necessarily governs the

14  enforcement of the clause unless a need to create a uniform federal rule is

15  recognized.

#### 2. The Law of the State Having the "Most Significant Relationship" With the Insurance Transaction and the Parties Applies.

18  Under well established case law, this court will determine which state law

19  applies by "ascertaining and valuing points of contact between the transaction

20  [giving rise to the cause of action] and the states or governments whose competing

21  laws are involved." *American Home Assurance Co. v. L&L Marine Service, Inc.*, 153

22  F.3d 616, 619 (8th Cir. 1998) (applying the "most significant relationship" choice of

23  law analysis) (citing *Advani Enterprises, Inc. v. Underwriters at Lloyd's*, 140 F.3d

24  157, 162 (2nd Cir. 1998) (quoting *Lauritzen v. Larsen*, 345 U.S. 571, 582 (1953)).

25  The Ninth Circuit made it clear in *Aqua-Marine Constructors, Inc. v. Banks*,

26  110 F.3d 663, 674 (9th Cir. 1997), that the "most significant relationship" choice of

27  law analysis is the law of this circuit in a marine insurance case.  Defendants

28
Case No.:  CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

1  expressly agree that *Aqua-Marine* sets out governing choice of law analysis (as they

2  went so far as to cite it for that purpose in their Answer, Dkt. no. 8 at 5, affirmative

3  defenses ¶1, lines 25-26).

4      The choice of law analysis performed to determine which state has the "most

5  significant relationship" with the transaction and parties follows a comprehensive

6  approach laid out at *Restatement (Second) of Conflict of Laws* § 188. *Aqua-Marine*,

7  110 F.3d at 674; *accord American Home*, 153 F.3d at 619. That section reads as

8  follows:

9      188. Law Governing in Absence of Effective Choice by the Parties

10
11      (1) The rights and duties of the parties with respect to an issue in
    contract are determined by the local law of the state which, with
12      respect to that issue, has the most significant relationship to the
    transaction and the parties under the principles stated in § 6.

13
14      (2) In the absence of an effective choice of law by the parties (see §
    187), the contacts to be taken into account in applying the principles
15      of § 6 to determine the law applicable to an issue include:

16      (a) the place of contracting,

17      (b) the place of negotiation of the contract,

18      (c) the place of performance,

19      (d) the location of the subject matter of the contract, and

20
21      (e) the domicile, residence, nationality, place of incorporation and
    place of business of the parties.

22
23      These contacts are to be evaluated according to their relative
    importance with respect to the particular issue.

24
25      (3) If the place of negotiating the contract and the place of
    performance are in the same state, the local law of this state will
    usually be applied, except as otherwise provided in §§ 189-199 and

26
27
28

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

203.[2]

### 3. Washington Has the Most Significant Relationship with the Insurance Transaction and Policy.

PSVOA and SVR are Washington entities. ASI joined PSVOA/SVR to obtain the insurance at issue through the services of Seattle broker, Acordia, which placed the insurance with Syndicate 535 in London. PSVOA alone paid the Miller Settlement which put Miller Claim payments beyond the $1 million policy limit, setting the stage for PSVOA's desire to recover additional money from Syndicate 535. Notwithstanding all of that, defendants contend that Alaska law should apply because ASI is an Alaska company, it was the named defendant in the underlying Miller Claim, and the Miller Claim was litigated in Alaska. Going through the analysis laid out in *Aqua-Marine* and *Restatement (Second) of Conflict of Laws* § 188, however, it becomes quite clear that Washington has the most significant relationship with the insurance and parties in the case. Therefore, Washington law applies.

Before analyzing each of the five factors spelled out at *Restatement (Second) of Conflict of Laws* § 188 (2), it is important to note that the factors are to be analyzed with reference to the specific issue presented. The last sentence of § 188 (2) instructs that "These contacts are to be evaluated according to their relative importance with respect to the particular issue."

### a) The place of contracting was Washington and certainly not Alaska.

The place of contracting was Washington. There is no evidence that would allow anyone to reasonably conclude that it was Alaska.

---

[2] Although Washington's own choice of law rules would not apply per force in this case, it is notable that Washington's choice of law analysis for a marine insurance policy is similar to the Restatement approach. "[T]he law of the place where the contract is entered into controls the determination of the rights and liabilities of the parties thereunder." *Williams v. Steamship Mutual Underwriting Ass'n*, 45 Wn.2d 209, 229 (1954).

Case No.: CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

1    In their own answer, PSVOA and ASI admit that PSVOA, based here in
2  Seattle, obtained the Policy including the SP-38 Protection & Indemnity Clauses at
3  issue for the benefit of itself, its Washington affiliates SVR and Purse Seine
4  Services, Inc., and its various member vessel owners (one of which was ASI)
5  through PSVOA's insurance broker Acordia here in Seattle.  Ex. A to Vikstrom Dec.
6  (Policy cover sheet on Acordia paper, WF00081); Answer, Dkt. no. 8, at 2-3, ¶5, and
7  at 7-8, ¶6.  PSVOA and ASI have admitted that Syndicate 535 is a Lloyd's syndicate
8  based in London.  Amended Complaint, Dkt. no. 3 at 1, ¶2; Answer, Dkt. no. 8 at 1,
9  ¶2.

10    In addition to those points, the Policy itself states in relevant part at the
11  bottom of page 1 of 59, "this Policy shall not be valid unless countersigned by a duly
12  authorized representative of the Company." Beneath that, the Policy was expressly
13  "Countersigned at Seattle, Washington," with that underlined location having been
14  written by hand next to the signature of the "Authorized Representative."  Ex. A to
15  Vikstrom Dec., WF00081.

16    Moreover, the one and only address that appears on the SP-38 Protection &
17  Indemnity Clauses specifically is PSVOA's address in Seattle.  Ex. A to Vikstrom
18  Dec., WF00113 at lines 3-4.

19    There was no direct contact whatsoever between Syndicate 535 and ASI
20  during the formation of the Policy.  Alaska simply had no connection to the place of
21  contracting.

22  b)    The place of negotiation was Washington, and
         possibly England, but certainly not Alaska.
23
24  PSVOA and ASI plainly stated in their answer that Policy negotiations were
     made by and through PSVOA's broker in Seattle with not only Syndicate 535 in
25
     London but also a Lloyd's broker in London and National Casualty with respect to
26
     its 50% participation in the Policy.  Thus, it is beyond dispute that the place of
27

28
Case No.: CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10     KEESAL, YOUNG & LOGAN
                                                  1301 FIFTH AVENUE, SUITE 1515
                                                  SEATTLE, WASHINGTON 98101
                                                  (206) 622-3790

1  negotiation was Washington, and perhaps England as well. There is no basis,

2  however, for PSVOA and ASI to contend with a straight face that Alaska was the

3  place of negotiation.

4      More specifically, PSVOA and ASI stated in their answer that: PSVOA

5  sought the coverage at issue for its members through Acordia; Acordia also

6  coincidentally had limited authority to bind Syndicate 535 under a separate

7  agreement that Acordia had negotiated with London broker Cooper & Gay Ltd.;

8  Acordia did bind Syndicate 535 to the insurance at issue; and Acordia also obtained

9  the agreement of National Casualty to take on 50% of the insurance risk. Answer,

10 Dkt. no. 8, at 2-3, ¶5, and at 7-8, ¶6.

11     Although PSVOA may have been issued an insurance certificate to show that

12 it was one of the PSVOA members insured under the terms of the Policy (as PSVOA

13 and ASI also state in their answer), such documentation of its status as an insured

14 hardly qualifies of negotiation of the Policy between PSVOA and Syndicate 535.

15          c)    **The relevant place of performance was England or**
                  **Washington, but certainly not Alaska.**
16

17     It is axiomatic that Syndicate 535's performance of its obligations under the

   Policy, and specifically the marine protection and indemnity insurance at issue
18
   under the SP-38 Protection & Indemnity Clauses, was to pay claims as agreed.
19
   There is no evidence to support any contention by PSVOA and ASI that Syndicate
20
   535 had an obligation to pay any claims in Alaska.
21
       First, it is undisputed that Syndicate 535 is a Lloyd's syndicate based in
22
   London. Naturally it would perform its obligations in London, directing payment on
23
   claims either to an insured's London broker when there is one or to its foreign
24
   broker if there was no London broker.
25
       In this case, it is undisputed that Lloyd's broker Cooper & Gay as well as
26
   Seattle broker Acordia, were both involved, as indicated in PSVOA and ASI's
27

28
KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

1   statements in their answer.  Answer, Dkt. no. 8, at 2-3, ¶5, and at 7-8, ¶6.

2   Second, it is undisputed that PSVOA paid the Miller Settlement that pushed

3   the Miller Claim payments beyond the $1 million policy limit, and it is PSVOA that

4   seeks to recover a further payment of $131,461 from Syndicate 535.  That is why

5   PSVOA's executive director Zuanich recommended to PSVOA's board in May of this

6   year that PSVOA "Send a request to Lloyd's and Wells Fargo [referring to Syndicate

7   535 and Acordia, nka Wells Fargo] confirming that the remaining $131,461 owing

8   under the policy is now due and payable" and to "initiate a lawsuit against Lloyd's

9   in the appropriate federal or state court" if confirmation is not received within 10

10  days.  Ex. D to Vikstrom Dec. (Zuanich memo, PSVOA 00073).

11  Even assuming for purposes of this motion that Syndicate 535 had an

12  obligation to make any further payment directly to PSVOA (as opposed to a London

13  or Seattle broker), that would be a payment to PSVOA in Washington.  ASI did not

14  make any payment on the Miller Settlement, and so there is no basis upon which

15  PSVOA and ASI can legitimately argue that Syndicate 535 could have any

16  obligation to perform by making the further payment sought beyond policy limits to

17  ASI in Alaska.

18  Furthermore, any argument centered upon ASI's identity as an Alaska entity

19  carries no weight.  Not only is it undisputed that PSVOA alone (not ASI) paid the

20  Miller Settlement, but after Syndicate 535 filed this lawsuit PSVOA purchased any

21  claims that ASI may have had in any event by an assignment dated July 1, 2009.

22  Answer, Dkt. no. 8, at Ex. 4 thereto.  Thus, PSVOA is the only party in real interest

23  with respect to any further recovery sought from Syndicate 535.  PSVOA is a

24  Washington entity having its principal place of business here in Washington.  Even

25  assuming for argument that there was a further obligation on the part of Syndicate

26  535 to make a further payment and to make it directly to PSVOA , the place of

27  performance would be here in Washington, not in Alaska.

28

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

### d) The location of the subject matter of the contract was Alaska and ultimately Washington.

The subject matter of the contract was insurance of marine protection and indemnity risks as spelled out in the SP-38 Protection & Indemnity Clauses. The named insureds were PSVOA and PSVOA affilitates SVR and Purse Seine Services, Inc. (all Washington entities based here in Seattle) as well as individual certificate holder ASI (Alaska entity based in Alaska). Ex. A to Vikstrom Dec., WB 00081. The particular subject matter of the underlying Miller Claim arose in Alaska and was litigated there, ultimately resulting in the Miller Settlement paid solely by PSVOA and leading to PSVOA's claim for further payment from Syndicate 535. Considering again that PSVOA is a Washington entity based in Seattle, these facts show that the location of the subject matter of the insurance at issue was both Washington and Alaska, but ultimately ending with a claim for further payment by PSVOA here in Washington.

### e) The relevant parties are based in Washington and England, as ASI is not a relevant party.

It is beyond dispute that the named insureds PSVOA and PSVOA affilitates SVR and Purse Seine Services, Inc. are all Washington entities based here in Seattle. That is reflected on the very first page of the Policy, and their Seattle address is the only address stated in the SP-38 Protection & Indemnity Clauses themselves. Ex. A to Vikstrom Dec., WF 00081, 00113.

Furthermore, PSVOA and ASI also admit that Syndicate 535 is a Lloyd's syndicate underwriter based in London. Amended Complaint, Dkt. no. 3 at 1, ¶2; Answer, Dkt. no. 8 at 1, ¶2. The mere fact that ASI was an insured and is an Alaska entity does not allow PSVOA and ASI to gloss over other parties' Washington and England contacts and reach a (false) conclusion that Alaska has a significant interest in having its law apply. Bearing in mind the instruction of Restatement § 188 (2) that "contacts are to be evaluated according to their relative

Case No.: CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

1  importance with respect to the particular issue," ASI is a relatively unimportant

2  party. It is only a nominal party both because it did not pay any of the Miller

3  Settlement for which further recovery is sought from Syndicate 535 and because

4  ASI assigned any claims that it had to PSVOA in any event. Thus, PSVOA is the

5  real party in interest insofar as the pursuit of further recovery from Syndicate 535

6  is concerned.

7       Consequently, Washington is the state that has the most significant interest

8  in the resolution of the issue presented. Because ASI only has a nominal role,

9  Alaska's interest is correspondingly nominal. *Aqua-Marine,* 110 F.3d at 675

10  (California's interest in having its law apply was minimal considering that the

11  party who was a California resident had become a nominal party when he did not

12  defend the claim against him and his default was entered). Resolution of the issue

13  presented will have no substantial effect on ASI, so there is no significant Alaska

14  relationship.

15       Resolution of the issue will, however, have a substantial effect on PSVOA as

16  the sole party who paid the Miller Settlement and seeks further recovery from

17  Syndicate 535. Accordingly, Washington has a significant interest in having its law

18  apply to its corporate citizen in relation to an insurance policy entered and

19  negotiated in Washington.

20     C.    **The One Year Suit Time Limit Must Be Enforced Under Washington Law.**

21

22       The meaning of the one-year time limit set forth in the SP-38 Protection &

    Indemnity Clauses is unmistakable. Referring to a similar contractual time limit

23

    set out in another marine insurance contract, the Supreme Court stated almost 80

24

    years ago, "There is no dispute as to the meaning of the provision in the policy. It is

25

    that the insurer shall not be liable unless suit is brought within one year of the

26

    loss." *Home Insurance Co. v. Dick,* 281 U.S. 397, 403, 406 (1930). Likewise here,

27

28

Case No.: CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

1  the one-year time limit in the SP-38 Protection & Indemnity Clauses means that

2  Syndicate 535 shall not be liable to any insured unless the insured brings suit

3  within one year from the date of the payment of an underlying claim.

4       The clause is enforceable under Washington law.  First, RCW 48.12.200

5  expressly allows for such contractual time for suit clauses so long as the time period

6  is not less than one year.

7       Second, Washington courts have consistently enforced such time for suit

8  clauses in insurance policies.  Perhaps the most relevant example is *Pacific Queen*

9  *v. Atlas Assurance Co.*, 1962 A.M.C. 574, 600 (W.D. Wash. 1962).  In that case, the

10  Washington Supreme Court enforced a contractual one-year time limit in a marine

11  insurance policy, holding that the insured could not recover because no suit was

12  brought within the one-year time limit.

13       Other examples of Washington cases enforcing similar insurance policy time

14  limit clauses include: *Panorama Village Condominium Owners Ass'n v. Allstate Ins.*

15  *Co.*, 144 Wn.2d 130, 138-39 (2001); *Hassett v. Pennsylvania Fire Ins. Co.*, 150 Wn.

16  502, 508 (1929) (enforcing a one year suit time limitation holding that the provision

17  was "reasonable and valid, and should be enforced by the courts when applicable to

18  any state of facts presented for determination"); *Hefner v. Great American Ins. Co.*,

19  126 Wn. 390, 391 (1923) (reversing lower court and reinstating order granting a

20  nonsuit and dismissing the action because insured failed to bring suit within the

21  contractual one-year time limit); *Wothers v. Farmers Ins. Co.*, 101 Wn. App. 75, 80

22  (2000); *Ashburn v. Safeco Ins. Co.*, 42 Wn. App. 692, 696 (1986).

23       It merits mention that a Washington statute of limitation cannot enlarge a

24  contractual time limit for commencement of an action.  *Wothers*, 101 Wn. App. at 80

25  (citing *Yakima Asphalt Paving Co. v. Dep't of Transp.*, 45 Wn. App. 663, 666 (1986)).

26  Instead, as mentioned earlier, RCW 48.18.200 expressly allows for contractual time

27  for suit clauses in insurance policies (specifically including marine insurance) as

28

Case No.:  CV 09-00791

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

1  long as the time is not less than one year. Washington courts have appropriately

2  observed, therefore, that there is no statutory prohibition on a contractual one-year

3  time for suit clause. "To the contrary, in providing that limitation of a right of

4  action in an insurance policy may not be less than 1 year from the date of loss, RCW

5  48.18.200 impliedly authorizes (but does not require) such a period." *Ashburn*, 42

6  Wn. App. at 696.

7          There is nothing unusual about the enforcement of such clauses under state

8  law. Courts outside of Washington have enforced time for suit clauses in marine

9  insurance policies under the law of other states. *E.g., S.E.A. Towing Co. v. Great*

10 *Atlantic Ins. Co.*, 688 F.2d 1000 (5th Cir. 1982) (Louisiana law); *H.D. Brandyce and*

11 *Co. v. Globe & Rutgers Fire Ins. Co.*, 1930 A.M.C. 7, 8 (N.Y. Ct. of App. 1929) (New

12 York law).

13         The time for suit clause at play here required that any claim to recover from

14 Syndicate 535 be filed within one year from when PSVOA paid the Miller

15 Settlement in December of 2007. PSVOA and ASI admit that they did not bring

16 any such action within one year. Amended Complaint, Dkt. no. 3 at 4, ¶26; Answer,

17 Dkt. no. 8 at 5, ¶26. Accordingly, Syndicate 535 can have no liability to pay

18 anything further to PSVOA or ASI, and their counterclaims are barred as a matter

19 of law because they were filed more than 18 months after PSVOA paid the

20 underlying Miller Settlement.

21 / /

22 / /

23 / /

24 / /

25 / /

26 / /

27 / /

28

Case No.: CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

1

### III.  CONCLUSION.

There are no genuine disputed issues of material fact and Syndicate 535 is

entitled as a matter of law to a declaratory judgment that nothing further is owed to

defendants and an order dismissing all defendants' counterclaims because no action

was commenced within one year as required by the applicable policy of insurance.

DATED this 8th day of October, 2009.

KEESAL, YOUNG & LOGAN

/s/  Robert J. Bocko
Robert J. Bocko, WSBA No. 15724
Nicolas J. Vikstrom, WSBA No. 38420
1301 Fifth Avenue, Suite 1515
Seattle, Washington  98101
Telephone:  (206) 622-3790
Facsimile:   (206) 343-9529
E-mail:     *robert.bocko@kyl.com*
            *nick.vikstrom@kyl.com*

## CERTIFICATE OF SERVICE

I hereby certify that on the date given below, I electronically filed the foregoing **Plaintiff's Motion for Summary Judgment** and **[Proposed] Order Granting Plaintiff's Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following persons:

Christopher W. Nicoll
Chris P. Reilly
Nicoll Black & Feig PLLC
816 2nd Avenue, Suite 300
Seattle, WA 98104-1534
Attorneys of record for Defendants
Purse Seine Vessel Owners Association
and F/V Aleutian Spirit, Inc. and Third-
Party Defendant Robert Kehoe

Geoffrey Bridgman
Emily Gant
Ogden Murphy Wallace PLLC
1601 5th Ave, Ste 2100
Seattle, WA 98101-1686
Attorneys for Third-Party Defendant
National Casualty Co.

DATED this 8th day of October, 2009, at Seattle, Washington.

Nicolas J. Vikstrom

KYL_SE59280

Case No.: CV 09-00791
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790