The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| D.H. EVERS, etc.,<br><br>                          Plaintiff,<br><br>    vs.<br><br>PURSE SEINE VESSEL OWNERS ASSOCIATION, et al.,<br><br>    Defendants and Counter-Claimants, | Case No. CV 09-00791<br><br>**PLAINTIFF'S REPLY SUPPORTING MOTION FOR SUMMARY JUDGMENT** |
| D.H. EVERS, etc.,<br><br>             Third-Party Plaintiff,<br><br>    vs.<br><br>ROBERT KEHOE, et al.,<br><br>             Third-Party Defendants. | |

## I.    SUMMARY OF REPLY

Defendants raised no genuine disputed issues of material fact to defeat summary judgment. The governing choice of law test heavily favors Washington as the jurisdiction having the most significant interest in having its law apply. Defendants' argument for Alaska law largely emphasizes factors outside the list of elements to be considered under the choice of law test and places undue emphasis on ASI's status as an Alaska corporation. PSVOA is the only real party in interest.

The one-year time for suit clause in the SP-38 Protection & Indemnity

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 1

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

Clauses is enforceable under Washington law. The prejudice factor that Defendants seek to introduce under Alaska law does not apply.

Syndicate 535 told PSVOA in July of 2008 that it would not pay funds beyond the policy limit, leaving PSVOA five months to file suit before the deadline ran out in December of 2008. Nothing prevented PSVOA from filing suit at any time before then. PSVOA has not presented facts to establish any of its various equitable arguments aimed at evading the time limit, which broadly bars all claims.

## II. REPLY ARGUMENT

### A. The Choice of Law Factors Point to Washington Law

The parties agree that the test set forth in the Restatement (Second) of Conflict of Laws § 188 applies to determine whether Washington or Alaska law governs the time for suit clause. There are no disputed issues of material fact inasmuch as § 188 specifies the material factors to be considered and none of them are in dispute. Defendants' argument for Alaska law fails, however, because they fail to account for undisputed material facts, argue immaterial points, and completely ignore the instruction at § 188(2) that "contacts are to be evaluated according to their relative importance with respect to the particular issues."

Factors listed in § 188 weigh heavily in favor of Washington law. Defendants cannot seriously deny that the most important contacts are with Washington as to the issue presented, namely reimbursement beyond the policy limit sought by Seattle-based PSVOA for the Miller Settlement that it funded. Defendants place undue emphasis on ASI, which is the only party connected to Alaska. ASI did not fund the Miller Settlement. PSVOA is the only insured seeking reimbursement.

#### 1. Washington Was the Place of Contracting

Defendants do not deny that PSVOA obtained the Policy through its broker Acordia (n/k/a Wells Fargo) here in Seattle, that the Policy was signed in Seattle or that the Policy is addressed to PSVOA/SVR here in Seattle. Indeed they submitted

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 2

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

further proof that the Policy and even the Certificate of Insurance that SVR (not Syndicate 535) issued to ASI were "*Countersigned at Seattle, Washington*." Exs. 2 and 3 to Declaration of Robert P. Zuanich ("Zuanich Dec."), Dkt. No. 62, WF00184 and WF00081 (emphasis added). Instead, Defendants only argue that the place of contracting in Washington should be considered "insignificant."

To the contrary, the place of contracting *is* a significant factor under the facts here. Defendants misplace reliance upon *Industrial Indemnity Ins. Co. v. United States*, 757 F.2d 982 (9th Cir. 1985). There, the Ninth Circuit only said, "the place of contracting is a relatively insignificant factor *when there is no other significant relationship between the transaction and the place.*" *Id.* at 986 (emphasis added).

In contrast, here, there are other significant relationships with Washington. It was not happenstance that Washington is the place of contracting: Seattle-based PSVOA and SVR are the Policy's primary named insureds; they are industry associations that obtained the Policy as part of their insurance program for members like ASI; they signed and issued their own certificate of insurance to their member ASI in Seattle; PSVOA/SVR managed the claims Seattle; PSVOA's insurance broker Acordia is based in Seattle; PSVOA's in-house counsel who defended the Miller Claim, Kehoe, is a Washington attorney; the only address on the Policy is PSVOA and SVR's Washington address; the Policy and SVR's certificate of insurance were both countersigned in Seattle; PSVOA is the entity seeking reimbursement for funding of the Miller Settlement beyond policy limits.

The place of contracting was undeniably Washington, the hub of the insurance relationship. That weighs heavily in favor of Washington law.

### 2. Washington Was the Place of Negotiation

Defendants also do not contest that the place of negotiation was Washington. They certainly offered no evidence of any significant Alaska contact. Instead, they

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 3

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

argue this factor is "less important" when negotiation occurred by mail or phone. That argument makes no sense here.

First, it ignores that Acordia was both PSVOA's broker and the "Coverholder" authorized to bind coverage for PSVOA members like ASI to PSVOA's Policy here in Seattle. Answer, Dkt. no. 8 at 2-3, ¶5. PSSVOA Executive Director Zuanich said in a May 21, 2009, memo to his Board of Directors that "[PSVOA] and its affiliate marine insurance pools purchased" the Policy and that "All PSVOA communication with [sic] through its broker, Acordia Inc. and then Wells Fargo." Ex. D to Vikstrom Dec., Dkt. No. 41-2, at 80. Seattle was the place of negotiation. Defendants submitted no evidence to support the suggestion that negotiations were between various states by phone, fax, and mail. Second, Defendants offered no evidence of any Alaska contact or that ASI played any role in negotiating the Policy as part of PSVOA's insurance program. In fact, even the certificate of insurance that SVR (not Syndicate 535) issued to ASI was signed in and sent from Seattle, not Alaska. Ex. 2 to Zuanich Dec. at WF00184; Ex. C to Vikstrom Dec. Third, the place of negotiation centered on Seattle for the very reason that PSVOA and SVR are located here. They are the named insureds. Ex. 1 to Zuanich Dec. at WF00079.

PSVOA alone paid the Miller Settlement, and the "particular issue" here is whether it is entitled to reimbursement from Syndicate 535 beyond the policy limit. Particularly considering that PSVOA is a Washington entity, the fact that the Policy was negotiated here was no accident and it is an important factor showing why Washington has the most significant interest in having its law applied.

### 3.  The Place of the Performance Sought is Washington

Defendants argue immaterial points and place undue emphasis upon ASI in a failed attempt to show that the place of performance of the Policy is Alaska. Again, the "particular issue" here is whether PSVOA is entitled to reimbursement from Syndicate 535 beyond the Policy limit. The only performance relevant to that would

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 4

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

be the payment PSVOA seeks from Syndicate 535.[1] Any such payment performance by Syndicate 535 would be made in London to PSVOA in Seattle, likely through PSVOA's brokers in London and/or Seattle.

Events of the underlying Miller Claim tried in Alaska have no bearing on the performance sought. Certainly there is no performance aspect involving Alaska. Defendants push far too hard on their argument that the indemnity duty runs to ASI in Alaska. ASI never paid anything, so it had no recovery to pursue from Syndicate 535. It is undisputed that PSVOA was the only insured that paid the Miller Settlement. Exs. D and G to Vikstrom Dec. Dkt. No. 41-2. Thus, only PSVOA had any potential "recovery" to pursue. The Zuanich memo to PSVOA board members proposing that PSVOA take legal action to recover beyond the policy limit is conclusive evidence of this. Ex. D to Vikstrom Dec. (PSVOA 00070-73). Even if ASI did have any recovery to pursue, PSVOA would own that now by assignment. There simply are no facts to support Defendants' strained argument that the indemnity runs to ASI.

4. **The Subject Matter is PSVOA's Claim for Reimbursement**

Defendants' argument of the location of the subject matter of the Policy once again unduly focuses upon ASI's fishing vessel operation in Alaska instead of the subject matter of the "particular issue" presented in this lawsuit. PSVOA/SVR purchased the Policy as reinsurance for the insurance program provided to their members like ASI. Ex. D to Vikstrom Dec., Dkt. No. 41-2.

The Miller Claim that arose in Alaska fully resolved after it was tried and then PSVOA paid the Miller Settlement in December 2007 (in keeping with SVR's Articles of Association). Ex. C to Vikstrom Dec. It is undisputed that Syndicate 535

---

[1] PSVOA's payment of premium for the Policy might be another performance factor to consider, but Defendants do not contend that occurred in Alaska. Indeed, PSVOA would have had to pay premium to Syndicate 535 in London. While ASI paid SVR annual "contribution" pursuant to the certificate of insurance, ASI paid that to SVR, not Syndicate 535. Ex. 2 to Zuanich Dec.

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 5

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

has fully paid its 50% share of the $1 million policy limit. Amended Complaint, Dkt. no. 3 at 3, ¶19; Answer, Dkt. no. 8 at 5, ¶19. Although the original subject matter was marine protection and indemnity risk as spelled out in the SP-38 Protection & Indemnity Clauses, the Alaska connection to those risks passed out of the picture after the Miller Settlement. This is because the "particular issue" is whether PSVOA is entitled to reimbursement from Syndicate 535 beyond the policy limit. Giving due consideration to this "particular issue" as § 188(2) instructs, there is no importance to the historical fact that ASI operated its vessel in Alaska.

This is not a coverage dispute focused upon a risk located in Alaska. Again, Syndicate 535 has fully paid its 50% of the policy limit. The subject matter of the Policy at this time is nothing other than PSVOA's claim for reimbursement beyond the policy limit. That claim rests with PSVOA where it is based here in Seattle (along with any alleged ASI claims, all of which PSVOA owns by assignment).

### 5. Relevant Parties are Located in Washington and London

Defendants present no additional argument on the location of the parties except to point out that their significance depends on the issue involved and the extent to which they are grouped with other contacts. Syndicate 535 concurs. Considering that the issue is whether PSVOA is entitled to reimbursement from Syndicate 535 beyond the policy limit, it is readily apparent that the locations of PSVOA and Syndicate 535 are the only important considerations for this factor. Defendants do not (and cannot) dispute that PSVOA is incorporated and based in Washington and Syndicate 535 is based in London.

PSVOA obtained an assignment of ASI's supposed claims *after* Syndicate 535 filed this action in a transparent effort to cloak itself with an Alaska flavor. But ASI has no recovery to pursue because only PSVOA paid the Miller Settlement and has any basis to seek reimbursement beyond the policy limit. ASI's Alaska presence carries little weight. *American Home Assurance Co. v. L&L Marine Service, Inc.*,

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 6

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

153 F.3d 616, 620 (8th Cir. 1998) (little weight given to domicile of insured whose claims had been paid in full by insurer in suit by subrogated insurer against other insurers for indemnification).

### 6. Washington Has the Greatest Interest

Washington has the most significant interest in having its law apply to a Policy negotiated and entered in Washington as to a claim for reimbursement sought by one of its corporate citizens. *See Aqua Marine Constructors, Inc. v. Banks*, 110 F3d. 663, 674-75 (9th Cir. 1997). PSVOA reaps the benefits of doing business in Washington, pursuant to the laws of Washington, and it only makes sense that Washington law should apply. Alaska has little if any interest in the issue presented. ASI did not pay the Miller Settlement and has no basis to seek recovery from Syndicate 535. Application of Alaska law will do nothing to "protect" an Alaska citizen. Instead, a Washington citizen seeks to invoke Alaska law in an effort to avoid enforcement of a valid term of a Policy that it negotiated and entered into in Washington, and under which it seeks recovery.

## B. Defendants' Claims are Time Barred

### 1. Defendants' Agency and Ratification Arguments Are Irrelevant

Defendants' agency and ratification arguments aimed at establishing that Syndicate 535 is bound by National Casualty's agreement to reimburse beyond the policy limit have no bearing on enforcement of the one-year time for suit clause. Whatever the claims are and regardless of the merits of the claims, they had to be brought in an action filed within one year of when PSVOA paid the Miller Settlement. Thus, the arguments aimed at establishing the merits of the claims are immaterial and raise no disputed issues of material fact.

Defendants do not dispute the material facts that (a) PSVOA paid the Miller Settlement in December 2007, (b) no later than July 2008 Syndicate 535 told

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 7

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

PSVOA it would not pay beyond the $1 million policy limit, and (c) no action was filed within the one-year time allowed for suit under the express term of the Policy. Defendants also do not contest that time for suit clauses are enforceable under Washington law. All that remains are the equitable arguments Defendants assert to try to avoid the one-year time for suit clause. None have merit.

### 2. No Facts Support the Defendants' Waiver Argument

Waiver is the "intentional relinquishment of a known right." *Wagner v. Wagner,* 95 Wn.2d 94, 102 (1980). There must be "unequivocal" acts showing an intent to waive the right. *Id.* It is fatal to Defendants' allegation that they point to no act by Syndicate 535 that could reasonably be construed as intentional relinquishment of the one-year time for suit clause of the Policy.

*Staats* appears to apply estoppel, not waiver. In any case it is plainly distinguished on its facts. In *Staats,* the court barred an insurer from relying on a time bar after it expressly told the plaintiff it wanted to wait until after other insurers acted before it acted. *Staats v. Pioneer Ins. Ass'n.,* 55 Wn. 51, 54 (1909). The insured acquiesced. *It was not until after the six month time bar had passed that the insurer denied Plaintiff's claim.* The court held that where "the delay in the commencement of the action was caused solely by the representations of the appellant's adjuster . . . it will not now be heard to . . . invoke the bar." *Id.* at 57.

In contrast, it is undisputed that Syndicate 535 told PSVOA that it would not reimburse beyond the policy limit in July 2008, *five months before the time limit for any lawsuit ran.* PSVOA filed no action before that time ran out, or ever for that matter. They did nothing until they filed counterclaims in response to Syndicate 535's declaratory judgment action in July 2009. These facts do not support waiver. *E.g., Jet Set Travel Club v. Houston General Ins. Group,* 30 Wn. App. 882 (1982) (finding no waiver and enforcing one-year time for suit limit in policy despite five month investigation and continued discussion of coverage after denial).

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 8

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

Defendants make much of a February 2009 email from Cooper Gay (PSVOA's London broker through whom Acordia obtained the Policy) indicating that Syndicate 535 was willing to further consider PSVOA's claim. That email cannot raise a genuine disputed issue of material fact as to waiver for two reasons: (1) even assuming the email is authentic,[2] it only expresses double hearsay (Cooper Gay writing of what Syndicate 535 allegedly said) which fails to meet the admissible evidence requirement of Fed. R. Civ. P. 56(e)(1); and (2) even if the email were admissible, it was sent two months after the time for suit ran in December 2008, when the claims were already time-barred. *Mele v. Mutual Marine Office*, 1992 A.M.C. 1717, 1719 (Sup. Ct. N.Y. 1991)(communications between insurer and insured after time limit ran insufficient to establish waiver or estoppel).

### 3. No Facts Support the Equitable Estoppel Argument

Defendants cite the correct test for equitable estoppel under Washington law, but fail to present facts sufficient to prove estoppel. Defendants' misplace reliance on *Dickson v. U.S. Fidelity & Guaranty Co.*, 77 Wn.2d 785 (1970). Just as in *Staats*, the insurer did not reject the insured's claim in *Dickson* until *after* the time limit had run. *Id.* at 788. Here, PSVOA knew no later than July 2008 that Syndicate 535 would not pay beyond the policy limit. (Defendants offered no evidence that ASI was involved in any way with PSVOA's claim for reimbursement.) PSVOA sat on whatever recovery rights it had for the following five months without filing any

---

[2] Defendants' conditional request for Fed. R. Civ. P. 56(f) relief should be denied. The authenticity of the documents submitted have no bearing on the outcome of the motion. Moreover, Defendants failed to show by affidavit that they cannot present facts essential to justify their opposition. Mere reference to a purported need for discovery in a brief or declaration does not qualify as a Rule 56(f) motion. *Brae Trans., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). Further, Defendants failed to demonstrate how any discovery sought would defeat the motion for summary judgment. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). Finally, Defendants' failure to diligently pursue discovery is not sufficient to justify a Rule 56(f) continuance. *Brae Trans.*, 790 F.2d at 1443. A party can "hardly argue" that a court abuses its discretion by denying Rule 56(f) relief and granting summary judgment when the requesting party did not timely pursue discovery. *Id.* Nothing prevented Defendants from deposing Seattle witnesses long before its opposition was due.

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 9

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

action before the time limit ran in December 2008. Equitable relief is not available to those who fail to exercise due diligence in the pursuit of legal rights. *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151 (1984).

Defendants present no evidence that Syndicate 535 did or said anything in the end of 2008 that prevented PSVOA from timely filing suit or caused it to believe that it would never need to do so. Defendants' argument that Syndicate 535 was bound by National Casualty's agreement to pay beyond the policy limit only reflects the ground on which PSVOA believes it has a right of further recovery. It is not evidence of any act or conduct on which PSVOA could have reasonably relied to withhold suit given that in July 2008 Syndicate 535 said that it would pay nothing more and PSVOA received no further recovery by the time December 2008 arrived. *Jet Set Travel,* 30 Wn. App. 882 (1982) (finding no equitable estoppel to bar one-year time for suit clause despite five month investigation and continued discussion of coverage after denial); *Yu v. Albany Ins. Co.*, 281 F.3d 803, 812 (9th Cir. 2002)(decision to proceed blindly in the face of Albany's silence was negligent, not reasonable, and their estoppel argument fails as a matter of law).

Defendants cannot reasonably contend that five months was an inadequate time for them to file a lawsuit. Courts have enforced time for suit clauses where insureds had much less time than that. *Magna Mercantile Co. v. Great American Ins. Co.*, 1969 A.M.C. 2063 (N.Y. Sup. Ct. 1968)(one-year time limit enforced under New York law, even though insured denied liability one week before time ran out).

Defendants utterly failed to present evidence to prove all equitable estoppel elements and therefore cannot evade application of the one-year time limit. *Santa Maria v. Pacific Bell,* 202 F.3d 1170 (9th Cir. 2000)(federal equitable estoppel applied to vacate verdict for plaintiff who failed to prove elements of estoppel).[3]

---

[3] Defendants' equitable tolling argument at n.18 of their brief also lacks merit. Equitable tolling applies where the plaintiff is ignorant of a time limit and there is no prejudice by a late filing or has

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 10

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

### 4. The One-Year Time Bar Applies to All Claims

Defendants argue that the one-year time for suit clause bars only a breach of contract claim under the Policy, leaving non-contractual claims to be governed by statutes of limitation. That not only contravenes the broad language of the clause, but it also runs headlong into the "well-established rule" that statutes of limitation apply only in the absence of an agreement expressly displacing them – exactly what we have here. *Rones v. Safeco Ins. Co.*, 119 Wn.2d 650, 655 (1992).

The time for suit clause broadly displaced all statutes of limitation in favor of a one-year time limit: "*No action* shall lie . . . for the recovery of *any loss* sustained by the assured unless such action is brought within one year . . . ." (Emphasis added.) Ex. A to Vikstrom Dec. at WF 00114. Nothing in that language limits its application to breach of contract claims. It is difficult to conceive of words broader than "*no action*" or "*any loss*." They necessarily reach every claim having a significant relationship to the Policy and all disputes having their origin or genesis in the contract. *Accord, Simula, Inc., v. Autolive, Inc.*, 175 F.3d 716 (9th Cir. 1999) (holding words "All disputes arising in connection with this Agreement" reach all claims related to the contract or having their origin in the contract).

Contrary to Defendants' contention, Washington law does not limit time for suit clauses to contract claims under the policy. Instead, courts in Washington and elsewhere have routinely applied time for suit clauses to bad faith and consumer protection act claims. *Wothers v. Farmers Ins. Co.*, 101 Wn. App. 75 (2000)(clause in policy requiring insured to "bring suit" within one year barred breach of contract and Consumer Protection Act claims); *Barrow Development Co. v. Fulton Ins. Co.*,

---

complied with a time limit in the wrong venue. *Santa Maria*, 202 F.3d at 1176; *Oltman v. Holland Am. Lines*, 538 F.3d 1271, 1278 (9th Cir. 2008). Tolling does not apply where the party has slept on their rights. *Burnett v. N.Y. Cent. RR. Co.*, 380 U.S. 424, 429 (1965). Here, PSVOA knew Syndicate 535 had rejected the claim five months before the time limit ran and yet did nothing until after Syndicate 535 filed this declaratory judgment 18 months after PSVOA paid the Miller Settlement.

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 11

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

418 F.2d 316, 319 (9th Cir. 1969)(claim for negligent adjustment of claim barred by clause providing that "no suit or action" could be brought after one year; declining to treat tort claim separate from contract claim since it would not have arose but for the contract); *Gordon v. State Farm*, 895 F.2d 1036 (5th Cir. 1990)(sensibly holding that there can be no recovery on statutory claims for arbitrary and capricious denial of an insurance claim where recovery on underlying insurance contract was time-barred); *DeRossi v. Nat'l Loss Mgmt.*, 328 F. Supp. 2d 283, 288 n.2 (D. Conn. 2004)(broad "all claims" limitation clause would bar claims for breach of contract, bad faith, and statutory violations).

For whatever reason, the court in *Keith v. CUNA Mutual Ins. Agency* did not consider or address relevant Washington case law like *Rones* and *Wothers* which plainly allow for a broadly worded time for suit clause to displace statutes of limitations for all claims that an insured might have against its insurer. Instead, the decision in *CUNA* was only informed by other Washington cases that had narrower time for suit clauses by use of words like claims "on this policy" or "arising out of this policy" (citing *Swchindt* and *Simms* for example). Thus, it is not surprising that CUNA failed to recognize that a broad time for suit clause does displace statutes of limitations for non-contract claims in light of such as Washington case law not considered like *Rones* and *Wothers*.

The time for suit clause in the Policy here broadly reaches all of Defendants' counterclaims, all of which stem from the insurance. Thus, all claims are barred.

### III. CONCLUSION

Defendants raised no disputed issues of material fact to defeat summary judgment. The choice of law test overwhelmingly points to Washington as the state having the most significant interest in having its law applied. Washington law enforces the broad one-year time for suit clause. Defendants lack facts to prove waiver or estoppel and cannot defeat summary judgment as to all claims.

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 12

DATED this 30th day of October, 2009.

KEESAL, YOUNG & LOGAN

/s/ Robert J. Bocko
Robert J. Bocko, WSBA No. 15724
Nicolas J. Vikstrom, WSBA No. 38420

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION FOR
SUMMARY JUDGMENT - 13

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790

# CERTIFICATE OF SERVICE

I hereby certify that on the date given below, I electronically filed the foregoing **PLAINTIFF'S REPLY SUPPORTING MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following persons:

| | |
|---|---|
| Christopher W. Nicoll<br>Chris P. Reilly<br>Nicoll Black & Feig PLLC<br>816 2nd Avenue, Suite 300<br>Seattle, WA 98104-1534<br>Attorneys for Defendants<br>Purse Seine Vessel Owners Association<br>and F/V Aleutian Spirit, Inc. | Geoffrey Bridgman<br>Emily Gant<br>Ogden Murphy Wallace PLLC<br>1601 5th Ave, Ste 2100<br>Seattle, WA 98101-1686<br>Attorneys for Third-Party Defendants<br>National Casualty Co. |

DATED this 30th day of October, 2009, at Seattle, Washington.

_____
Nicolas J. Vikstrom

KYL_SE59849

Case No. CV 09-00791
PLAINTIFF'S REPLY SUPPORTING MOTION
FOR SUMMARY JUDGMENT - 14

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WASHINGTON 98101
(206) 622-3790