UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| D.H. EVERS on behalf of the UNDERWRITING MEMBERS OF SYNDICATE 535 AT LLOYDS,<br><br>Plaintiff,<br><br>v.<br><br>PURSE SEINE VESSEL OWNERS ASSOCIATION, a Washington corporation, and F/V ALEUTIAN SPIRIT, INC., an Alaska corporation,<br><br>Defendants. | CASE NO. C09-791RSM<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

This case arises from a dispute over insurance coverage for an injury that occurred aboard the *F/V Aleutian Spirit*. Plaintiff D. H. Evers, on behalf of the Underwriting Members of Syndicate 535 at Lloyd's ("Syndicate 535") seeks a declaratory judgment that it has no further obligation to either defendant in connection with a policy of marine insurance in effect from October 1, 2001 to October 1, 2002. Amended Complaint, Dkt. # 1. In answering the amended complaint, defendants asserted counterclaims against plaintiff for breach of contract, bad faith, and violation of the Washington Consumer Protection Act. Dkt. # 8. The matter is now before the Court for consideration of plaintiff's motion for summary judgment on all claims. Dkt. # 40. Defendants have opposed the motion. After careful consideration of the parties' memoranda and exhibits, together with controlling law, the Court concludes that the motion should be granted in part and denied in part.

ORDER ON MOTION - 1

BACKGROUND

The relevant facts are not in dispute. Defendant Purse Seine Vessel Owners Association ("PSVOA") is a non-profit Washington organization with its principal place of business at Seattle, Washington. The purpose of the organization is to further the interests of the commercial fishing fleet. Through its affiliate, Seine Vessels' Reserve ("SVR"), PSVOA operates an insurance pool to provide insurance to member vessels, including the *F/V Aleutian Spirit*. Defendant Aleutian Spirit, Inc. ("ASI"), owner of the *F/V Aleution Spirit*, is an Alaskan corporation with principal place of business at Petersburg, Alaska.

In 2001, PSVOA sought "stop loss" insurance to cover its pool liabilities in excess of an annual aggregate of $2.2 million. Through a broker, Accordia Northwest, SVR purchased policy No. PMH2045/01, which provided coverage for all types of marine liability, up to $1 million per occurrence per insured vessel. This $1 million limit "erodes" as expenses are incurred on a given claim. National Casualty Company, not a party here, and Syndicate 535 each subscribed to 50% of the policy issued. PSVOA, SVR, and "Individual Certificate Holders as Declared" are named as insureds on the policy. The *F/V Aleutian Spirit* is named as a Certificate Holder on a 2002 endorsement to the policy. The period of the policy was from October 1, 2001 to October 1, 2002.

In April 2002, Jason Miller, a crew member on the *F/V Aleutian Spirit*, was injured when he slipped on an icy ramp while boarding the ship. Jason Miller is the son of James Miller, the ship's master and a primary shareholder in ASI. Jason Miller sued the owner of the vessel, ASI, in Alaska to recover damages for his injury. The matter was tried to the court in 2007, resulting in an award of damages to Jason Miller of $768,417, as set forth in Amended Findings of Fact and Conclusions of Law dated August 22, 2007. Declaration of Nicolas Vikstrom, Dkt. # 41, Exhibit F. This amount did not include interest, costs, and attorneys fees, all of which remained to be calculated, but which appeared likely to push the final judgment well over $1 million. Before judgment was entered, Jason Miller's attorney offered to settle the matter for $1 million. On December 7, 2007, coverage counsel for National Casualty Company sent written acceptance of the offer to plaintiff. Declaration of Robert Zuanich, Dkt. # 62, Exhibit 4.

The final total of all PSVOA's expenses related to Jason Miller's claim reached $1,253,642.14.

ORDER ON MOTION - 2

National has paid a 50% share of this amount, but Syndicate 535 has not. Syndicate 535 asserts that it was bound to pay only a 50% share up to the policy limit of $1 million, and that it is not bound by National's *ex gratis* payment over that amount. Defendants, in their counterclaim, allege that Syndicate 535 still owes PSVOA $131,460. Answer and Counterclaim, Dkt. # 8, ¶¶ 26-27. As noted above, plaintiff filed this action asking for a declaratory judgment that it owes nothing further to PSVOA. In this summary judgment motion, plaintiff contends PSVOA is barred from seeking further payment by a one-year limitation for suit set forth in the policy. This provision states, in relevant part,

> No action shall lie against this Company for the recovery of any loss sustained by the assured unless such action is brought within one year after the entry of any final judgment or decree in any litigation against the assured, or in the event of a claim without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such a claim.

SP-38 Protection and Indemnity Clause, Dkt. # 41, Exhibit A, p. 38.

Enforcement of this provision would bar defendants' counterclaims for breach of contract, and would result in a declaratory judgment in plaintiff's favor. Defendants' position is that this provision is unenforceable under Alaska law, and that under either Washington or Alaska law, plaintiff is estopped by its conduct from enforcing the one-year limitation. In order to decide this summary judgment motion, the Court must determine what law applies.

## DISCUSSION

### I. Legal Standard

Summary judgment should be rendered "if the pleadings, discovery and disclosure material on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. *Id*. "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of

ORDER ON MOTION - 3

the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d at 1221.

**II. Analysis**

In filing the complaint, plaintiff invoked the jurisdiction of this Court under admiralty alone, pursuant to 28 U.S.C.§ 1331. It is well settled that a marine insurance policy is a maritime contract within federal admiralty jurisdiction. *Morrison Grain Co. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 428 n. 4 (5th Cir.1980); *Irwin v. Eagle Star Ins. Co.*, 455 F.2d 827, 829 (5th Cir.1972). However, it is generally state law, not federal maritime law, which governs the interpretation of the insurance polices. *Bank of San Pedro v. Forbes Westar, Inc*., 53 F.3d 273, 275 (9th Cir.1995) ("We, like Congress, leave the regulation of marine insurance where it has been---with the States.") (quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321, 75 S.Ct. 368, 99 L.Ed. 337 (1955). Thus, absent a "federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice," state law governs the interpretation of a maritime insurance policy. *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 509-10 (9th Cir.1984); see also *Kitma AS v. Royal Ins. Co.*, 102 Wash.App. 716, 9 P.3d 239, 242 (Wash.Ct.App.2000) (noting that Washington choice of law rules employ the *Wilburn Boat* analysis). The parties have not asserted that federal maritime law governs the interpretation of the policy here. They each contend that state law applies to this Court's interpretation of the policy, but differ as to which state law applies, Washington's or Alaska's. The policy at issue contains no choice of law provision to guide this Court's analysis.

In the absence of a contractual choice-of-law clause in the policy, federal courts sitting in admiralty apply federal maritime choice-of-law principles derived from the Supreme Court's decision in *Lauritzen v. Larsen*[1] and its progeny. *Chan v. Soc'y Expeditions, Inc*., 123 F.3d 1287, 1296-97 (9th Cir.1997) (citations omitted). "Federal common law applies to choice-of-law determinations in cases based on . . . admiralty. . . . Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws." *Id*. at 1297 (citation omitted); *see also Aqua-Marine Constructors, Inc. v. Banks*,

---

[1] *Lauritzen v. Larsen*, 345 U.S. 571 (1953).

ORDER ON MOTION - 4

110 F.3d 663, 671, 674 (9th Cir.), *cert. denied sub nom. Polaris Insurance Co. v. Aqua-Marine Constructors*, Inc., 522 U.S. 933 (1997).

For a contract containing no choice of law provision, the *Restatement* directs consideration of five factors: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Under the *Restatement* approach, these contacts are evaluated according to their relative importance with respect to the particular issue in dispute. *Restatement (Second) of Conflict of Laws*, § 188(2). "[T]he protection of the justified expectations of the parties is of considerable importance in contracts . . . " *Id*. at comment b. If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied. *Restatement (Second) of Conflict of Laws* § 188(3). The ultimate goal is to determine, among the "eligible states," which jurisdiction has the greatest interest in the dispute. *Aqua-Marine*, 110 F.3d at 674.

The parties are in agreement that § 188 governs the choice of law here, but they differ in their proposed result of the five-factor analysis. The Court shall address these in turn.

(1) Place of contracting: The policy was issued by PSVOA's broker Accordia in Seattle, Washington. The policy was countersigned at Seattle, and states that it is effective "at place of Issuance" from noon, Pacific Standard Time—not Alaska time. Vikstrom Declaration, Dkt. # 41, Exhibit A, p. 1. While the place of contracting holds little significance where it stands alone or is a fortuitous choice, here it neither is fortuitous nor does it stand alone. *Restatement* § 188, comment e. The place of contracting here would be a significant factor in establishing the parties' expectations.

(2) Place of negotiation: Defendants assert in their answer that the policy was negotiated between Accordia (in Seattle) and a London agent for Lloyds (of which Syndicate 535 is a member). Defendants' Answer, Dkt. # 8, ¶ 5. The place of negotiation was therefore either Washington or possibly London, but not Alaska. Alaska residents ASI and *F/V Aleutian Spirit* were not a party to the policy negotiations but were added as Individual Certificate Holders under the policy.

The place of negotiation diminishes in significance where, as here, there was no single place of

ORDER ON MOTION - 5

negotiation because this occurred by mail or telephone between two different states. *Restatement* § 188, comment e.

    (3) Place of Performance: Where, as here, an indemnification policy does not designate a place of performance, an insurer must make payment in the state in which the insured is located. *Certain Underwriters at Lloyds, London, v. Inlet Fisheries, Inc.,* 370 F. Supp. 2d 974, 977 (D.Alaska (2004), *citing* 2 *Couch on Insurance*, § 24:13. The question arises as to who were the "insured," as the policy lists as insureds PSVOA, SVR, and "Individual Certificate Holders as Declared." Vikstrom Declaration, Dkt. # 41, Exhibit A, p. 5. The potential ramifications of ambiguity on this question were recognized and discussed by National's counsel Jay Sever in an evaluation letter dated September 20, 2007. Declaration of Christopher Nicoll, Dkt. # 63, Exhibit 3. However, with respect to the question of where payment to the insured was made, the question is resolved by an e-mail string between Mr. Sever and Rob Zuanich, Executive Director of PSVOA at the time of this occurrence. Declaration of Rob Zuanich, Dkt. # 62. These demonstrate that PSVOA "cut the check" in favor of Jason Miller, and then sought reimbursement from the insurers. *Id*., Exhibit 6. Performance of the obligation from insurer to its insured PSVOA was therefore due in Seattle.

    (4) Location of contract's subject matter: Defendants argue that the subject of the insurance policy was the vessel located in Alaska, where the Jason Miller accident occurred. As to this dispute, however, the subject matter of the contract was Syndicate 535's and National's obligation to PSVOA. That was the purpose of the policy, namely to reinsure PSVOA's obligations to the vessel owners, as pool members. The subject matter of the contract was therefore located in Seattle.

    (5) Domicile, residence, nationality, place of incorporation, and place of business of the parties: Analysis of these considerations produces a mixed result. ASI, the Millers, and the *F/V Aleutian Spirit* are all Alaskan residents. While they are not actual parties to this suit, their place of residence carries weight in this analysis, as Alaska has a strong interest in matters affecting its residents. Syndicate 535 is of British nationality and has its principal place of business in London, England. PSVOA is a Washington corporation. Thus, Washington, Alaska, and England all have some interest in the policy at issue. However, no party has asserted that English law applies, and its limited contacts are of minimal

significance under the *Restatement* approach. Alaska's interest in the matter has been satisfied, as the Jason Miller lawsuit has been settled on his terms, and he has been paid in full. Washington, being the location where the contract was made and performance occurred, as well as the location of the party whose interest is at stake, has the most significant contacts with the insurance policy. The Court therefore determines that Washington law, not Alaska law, applies to the matters at issue here.

That is, however, not the end of the matter. Defendants argue that "material factual issues concerning agency, waiver, estoppel, equitable tolling and ratification preclude enforcement of the suit limitation clause on summary judgment. Defendants' Opposition, Dkt. # 60, p. 16. As to the equitable estoppel and/or tolling, the Court agrees.

Washington courts have recognized tolling based on equitable estoppel. *Dickson v. United States Fidelity & Guaranty*, 77 Wash.2d 785, 788, 466 P.2d 515 (1970) ("The doctrine of equitable estoppel rests on the principle that where a person, by his acts or representations, causes another to change his position or to refrain from performing a necessary act to such person's detriment or prejudice, the person who performs such acts or makes such representations is precluded from asserting the conduct or forbearance of the other party to his own advantage."). The doctrine of equitable estoppel applies in the insurance context if there is "(1) [a]n admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party from allowing the first party to contradict or repudiate such admission, statement, or act." *Logan v. North-West Ins. Co.*, 45 Wash.App. 95, 100, 724 P.2d 1059 (Wash.Ct.App.1986).

Defendants have presented as exhibits more e-mails which may indicate that PSVOA was dissuaded from timely filing suit by plaintiff's assurances that it would consider further negotiations. Nicoll Declaration, Dkt. # 63, Exhibits 13-20. The record is incomplete, but these communications raise a factual issue sufficient to defeat summary judgment. Washington courts have found that "estoppel claims implicate factual issues which are not appropriate for resolution on a motion for summary judgment." *Time Oil Co. v. Cigna Property & Casualty Ins. Co.*, 743 F.Supp. 1400, 1419 (W.D.Wash.1990).

## CONCLUSION

Plaintiff's motion for summary judgment is accordingly GRANTED IN PART and DENIED IN PART. It is GRANTED to the extent that the Court has determined that Washington law shall apply to the policy of marine insurance. It is DENIED as to a determination that defendants' counterclaims are time-barred, as Washington law directs that equitable tolling and/or estoppel may apply. As to that question, factual issues preclude summary judgment.

DATED this 20 day of January 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE